THE HONORABLE THOMAS S. ZILLY

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                        Plaintiff,<br><br>vs.<br><br>APPROXIMATELY THREE MILLION SIX HUNDRED NINE THOUSAND EIGHT HUNDRED TWENTY (3,609,820) CIGARETTES OF ASSORTED BRANDS, MORE OR LESS, *et al.*<br><br>                        Defendants. | No C07-1603Z<br><br>ORDER |

This matter comes before the Court on Claimants' Motion for Summary Judgment (docket no. 29). For the reasons stated in this Order, the Court DENIES Claimants' Motion, and orders Claimants to show cause why the Court should not, *sua sponte,* grant summary judgment for Plaintiff.

ORDER - 1

## Background

### I.  Factual Background

Claimants Joan and Marvin Wilbur own and operate the Trading Post at March Point ("Trading Post"), a convenience store located within the Swinomish Reservation. Verified Complaint, docket no. 1, ex. A (Keller aff.) ¶ 9.  Joan Wilbur is a trustee of the Skagit Cigarette Sales Trust, which is registered with the Washington Secretary of State; her husband Marvin Wilbur, Sr., is a Registered Agent for the Trust.  Decl. of Joan Wilbur, docket no. 32, ¶ 3.  The Skagit Cigarette Sales Trust was the owner of the seized cigarettes.  Id. ¶ 2.  Mr. and Mrs. Wilbur are both enrolled members of the Swinomish Tribe.  Id. ¶ 3.

On May 15, 2007, law enforcement agents from the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") executed a search warrant at the Trading Post.  Id. ¶ 4.  The Swinomish Tribe had solicited federal assistance in ending what it considered to be the illegal sale of cigarettes on its reservation.  Second Decl. of Allan Olson (General Manager of Swinomish Tribe), docket no. 40, ¶ 10.  The ATF located and seized approximately 3,609,820 cigarettes of various brands, $88,936.00 in U.S. currency, and $ 38,171.96 in U.S. currency in the form of coins.  Verified Complaint, ¶ V.  Concurrently, IRS agents seized funds from the Skagit State Bank in the amount of $4,370.68, more or less.  Id.  The funds were seized as proceeds traceable to the illegal act of trafficking in contraband cigarettes.  Id. ¶ VIII.

## II. Procedural History

Joan Wilbur submitted a claim on behalf of the Skagit Cigarette Trust to recover the cigarettes and cash on July 9, 2007. Decl. of James Lobsenz, docket no. 30, ex. C. On October 5, 2007, the United States filed its Complaint for Forfeiture in rem. See Verified Complaint.

Claimants moved to dismiss the complaint under Rule 12(b)(1) and 12(b)(6). Claimants' Motion to Dismiss, docket no. 11 (Feb. 6, 2008). As to failure to state a claim, Claimants argued primarily that because "there are no applicable State or local cigarette taxes for cigarettes found on the Swinomish reservation, cigarettes found there can *never* constitute contraband cigarettes and therefore the seizure was unlawful." Id. at 2. The Court denied the motions, holding that (1) the Court had subject matter jurisdiction, and (2) the United States had alleged facts that, if true, would show that the seized cigarettes were contraband. Minute Order, docket no. 21 (April 15, 2008). The Court denied Claimants' Motion for Reconsideration. Minute Order, docket no. 24 (May 8, 2008) (responding to Claimants' Motion for Reconsideration, docket no. 23). Claimants submitted this Motion on December 30, 2008. Docket no. 29.

## III. Statutory and Contractual Provisions

A. Federal Statute (Contraband Cigarette Tax Act)

The Contraband Cigarette Tax Act, 18 U.S.C. § 2341 et seq. ("CCTA"), is a federal ban on the shipment, transportation, receipt, possession, sale, distribution, or

purchase of contraband cigarettes, id. § 2342(a). In addition to providing for criminal penalties for possession of contraband cigarettes, id. § 2342(a); § 2344(a), the statute also states that contraband cigarettes "shall be subject to seizure and forfeiture." Id. § 2344(c).

The statute explicitly defines "Contraband cigarettes" as follows:

> (2) the term "contraband cigarettes" means a quantity in excess of 10,000 cigarettes, which bear no evidence of the payment of applicable State or local cigarette taxes in the State or locality where such cigarettes are found, if the State or local government requires a stamp, impression, or other indication to be placed on packages or other containers of cigarettes to evidence payment of cigarette taxes . . . .

Id. § 2341(c)(2).

B. Washington State Statutes (RCW 82.24; RCW 43.06)

The Governor of Washington has the statutory authority to enter into cigarette tax contracts. RCW 43.06.455(1). These contracts may be entered in relation to cigarettes sold by "Indian retailers" in Indian Country. RCW 43.06.455(2). An "Indian retailer" is defined as "(i) a retailer wholly owned and operated by an Indian tribe, (ii) a business wholly owned and operated by a tribal member and licensed by the tribe, or (iii) a business owned and operated by the Indian person or persons in whose name the land is held in trust." RCW 43.06.455(14)(b). Thus, a cigarette tax contract with a tribe provides for a tribal tax in lieu of "state and local sales and use taxes on sales of cigarettes in Indian Country by Indian retailers." RCW 43.06.455(3).

ORDER - 4

The contracts shall provide that all cigarettes possessed or sold by a retailer[1] shall bear a cigarette stamp in order to assure that the tribal tax will be paid by the wholesaler obtaining such cigarettes. RCW 43.06.455(4). When the Governor enters into such a contract, the State retrocedes from its tax during the time of the contract. See RCW 43.06.455(3); RCW 82.24.295; see also Olson Decl., docket no. 31, Ex. A (Cigarette Tax Contract Between the Swinomish Tribe and the State of Washington ("CTC")) Part 4(e). The Governor's ability to reach a tax agreement with Indian tribes allows the tribes to themselves collect the taxes that the State would usually administer and spend the proceeds on essential government services. RCW 43.06.455(8); see generally Wilbur v. Locke, 423 F.3d 1101, 1104 (9th Cir. 2005).

The exempt status of certain cigarettes sold by Indian retailers on reservations is codified at RCW 82.24.295: "The taxes imposed by this chapter do not apply to the . . . distribution of cigarettes by an Indian retailer during the effective period of a cigarette tax contract subject to RCW 43.06.455."

C. <u>Cigarette Tax Contract Between Swinomish Tribe and State of Washington</u>

The Swinomish Tribe and the State entered into a Cigarette Tax Contract ("CTC") on October 3, 2003. CTC at p. 17. The CTC applies "to the retail sale of cigarettes by Tribal retailers." CTC Part II ¶ 2. The definition of "Tribal retailer" tracks the definition of "Indian retailer" in RCW 43.06.455(14)(b)(i) and (ii): "A cigarette retailer wholly owned by the Swinomish Tribe and located in Indian country

---

[1] "Retailer" and "Indian retailer" carry the same definition in RCW 43.06.455(14)(b).

or a member-owned smokeshop located in Indian country and licensed by the Tribe."[2] CTC Part I ¶ 20.

The Tribe is required to tax all cigarette retailers wholly owned by the Tribe, and any Tribal retailer in Indian country, the same amount that state and local governments would collect. CTC Part III(1)(b), (2)(a), 2(b). All cigarettes sold by Tribal retailers are required to bear a Tribal tax stamp. Id. Part V(1)(a); see generally id. Part V ("Tribal Stamps"). While the CTC is in effect, therefore, the State retroceded from its tax "pursuant to RCW 43.06.455." Id. Part III(2)(e).

The duration of the CTC is eight years from its effective date. Id. Part X. It automatically renews every eight years in the absence of a termination notice from either party. Id. The parties do not dispute that the CTC was in effect at the time the cigarettes were seized and remains in effect today.

The CTC was enacted into Chapter 17 of the Swinomish Tribal Code. See Second Decl. of Allan Olson, docket no. 40, ¶ 4; id. Ex. D, docket no. 40-5 ("Swinomish Tobacco Tax Code").[3]

---

[2] RCW 43.06.455, the enabling statute, allows a cigarette tax contract to contain a third definition of "Indian retailer." RCW 43.06.455(14)(b)(iii) ("a business owned and operated by an Indian person or persons in whose name the land is held in trust"). However, the CTC only defines "Tribal retailer" as encompassing the first two definitions.

[3] Allan Olson's Second Declaration notes that "[t]he Tribe amended the Tobacco Tax Code and the Tobacco Code to eliminate sales of cigarettes by individual Indian retailers on the Reservation and limited such sales to sellers wholly owned by the Tribe and located on the Swinomish Reservation." Second Olson Decl., ¶ 11.

**Discussion**

I.       Standard

The Court should grant summary judgment if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). A fact is material if it might affect the outcome of the suit under the governing law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In support of its motion for summary judgment, the moving party need not negate the opponent's claim, Celotex, 477 U.S. at 323; rather, the moving party will be entitled to judgment if the evidence is not sufficient for a jury to return a verdict in favor of the opponent, Anderson, 477 U.S. at 249.

When a properly supported motion for summary judgment has been presented, the adverse party "may not rely merely on allegations or denials in its own pleading." Fed. R. Civ. P. 56(e). Rather, the non-moving party must set forth "specific facts" demonstrating the existence of a genuine issue for trial. Id.; Anderson, 477 U.S. at 256.

To survive a motion for summary judgment, the adverse party must present affirmative evidence, which "is to be believed" and from which all "justifiable inferences" are to be favorably drawn. Id. at 255, 257. When the record, however, taken as a whole, could not lead a rational trier of fact to find for the non-moving

party, summary judgment is warranted. See Miller v. Glenn Miller Prod., Inc., 454 F.3d 975, 988 (9th Cir. 2006).

## II.     Analysis

The Government has alleged two plausible legal theories to justify its seizure of the cigarettes and proceeds as contraband. First, the Government continues to argue that the CTC and its enabling statute never provided that the State of Washington retroceded from taxing the cigarettes in question. If this were true, then the cigarettes undoubtedly failed to pay applicable state tax, and are contraband. Second, the Government makes several arguments for why, even if only a tribal tax was applicable, the cigarettes were nevertheless contraband.[4] Because the Government has clearly prevailed on the first issue, the Court does not reach the second.

///

///

///

---

[4] Claimants also spent significant time in their brief arguing that the seizure of their cigarettes on tribal land by the United States Government was a violation of tribal sovereignty. However, after it became apparent that the Swinomish Tribe had encouraged the seizure and participated in it, Claimants conceded that the Government's action did not infringe upon tribal sovereignty and no longer argues this as a basis for summary judgment. See Reply, docket no. 43, at 12; see also Second Olson Decl., ¶ 10 (noting that "[t]he Tribe solicited federal assistance in ending the illegal sale of cigarettes because the Tribe did not have the resources to act on its own. . . . The federal action thus strengthened the Tribe's ability to govern the Reservation.").

ORDER - 8

<u>Did the State of Washington retrocede from taxing the cigarettes possessed by Claimants?</u>

The Government argues that the cigarettes were subject to state tax because the State of Washington had not retroceded from taxing the cigarettes at issue. Response at 2 n.2 (incorporating Plaintiff's Memorandum in Opposition to the Motion to Dismiss, docket no 16). Claimants, on the other hand, argue that "the State of Washington has retroceded from the collection of *any* tax on the sale of cigarettes *by Swinomish tribal members* where the sales are made *on the Swinomish Indian reservation*." Claimants' Motion for Reconsideration, docket no. 23, at 1-2 (emphasis added); Motion at 2.

The statutory and contractual framework does not support Claimants' argument that the State has retroceded from "the collection of *any* tax on the sale of cigarettes *by Swinomish tribal members* where the sales are made *on the Swinomish Indian reservation*." Rather, the scope of the retrocession is more limited. RCW 43.06.455(2) allows cigarette tax contracts "in regard to retail sales in which Indian retailers made delivery and physical transfer of possession of the cigarettes from the seller to the buyer within Indian Country, and . . . not in regard to transactions by non-Indian retailers." Claimants equate the term "Indian retailer" with any retailer of Indian tribal membership, and the Wilburs would clearly meet that definition; they are registered members of the Swinomish Tribe. <u>See</u> Wilbur Decl., ¶ 3.[5] However, the

---

[5] Joan Wilbur's Declaration, docket no. 32, states that "the Skagit Cigarette Sales Trust is an Indian retailer and is the owner of the seized cigarettes." ¶ 4. However, this

statutory definition of "Indian retailer" directly forecloses such a meaning. It defines "Indian retailer" as: "(i) a retailer wholly owned and operated by an Indian tribe, (ii) a business wholly owned and operated by a tribal member *and* licensed by the tribe, or (iii) a business owned and operated by the Indian person or persons in whose name the land is held in trust." RCW 43.06.455(14)(b) (Emphasis added). Only the second prong is at issue, and although the Claimants are "tribal members," they were not licensed by the Tribe at times relevant to this forfeiture claim. See Second Olson Decl. ¶ 9; see also Motion for Reconsideration at 4–5 ("[T]he facts demonstrating that the Trading Post is not a "Tribal retailer" are undisputed . . . . Similarly, the United States has not alleged that the March Trading Post is licensed by the Tribe."). Given this definition, the Governor of Washington lacks the statutory authority to enter into contracts in which the State retrocedes from taxing someone other than an "Indian retailer" as is defined in RCW 43.06.455(14)(b).

The CTC tracks the language of RCW 43.06.455(14)(b) and did not provide that the Governor would retrocede from its tax on Claimants. In fact, the Governor would lack statutory authority to do so. The CTC uses the term "Tribal retailer," but

---

simple statement need not be accepted as fact, or as legally operative language under RCW 43.06.455(14)(b). For Claimants to be an "Indian retailer" under the Washington statute, they must have been licensed by the Tribe. Claimants have produced no evidence that they were licensed; to the contrary, the Swinomish Tribe's General Manager testified, "According to Tribal records, claimants at no time held a tribal license to sell cigarettes at the Trading Post when the cigarettes were seized. Tribal records show that the last license held by anyone for cigarette sales at the Trading Post was held by Mike Wilbur and expired on March 27, 2005, over two years prior to the seizure." Second Olson Decl., ¶ 9. In the face of these facts, no question of fact is presented by Claimant's conclusory and unsupported legal conclusion.

defines this term in the same manner as the statute defines "Indian retailer" as a "cigarette retailer wholly owned by the Swinomish Tribe located in Indian country or a member-owned smokeshop located in Indian country *and licensed by the Tribe.*" CTC Part I, ¶ 20 (emphasis added). The Claimants have not argued that they were ever licensed by the Tribe; on the contrary, they have argued in previous motions that they were not licensed by the Tribe and were not Tribal retailers.[6] Thus, the CTC did not apply to Claimants, and the State did not retrocede its power to tax these cigarettes. This legal conclusion is fatal to Claimants' argument that the res was not subject to state taxes and thus were not contraband.[7]

---

[6] See Motion for Reconsideration at 4 ("To begin with, the facts demonstrating that the Trading Post is not a 'Tribal retailer' *are undisputed."*). In that Motion, Claimants argued that they are not Tribal retailers under the CTC, but are "Indian retailers" under the statute. This statement of the law is incorrect. As the definitions of "Tribal retailer" in the CTC and "Indian retailer" in RCW 43.06.455(14)(b) are identical (with the exception that the CTC does not include RCW 43.06.455(14)(b)(iii), which neither party argues applies), Claimants have by definition conceded that they are neither an Indian retailer nor a Tribal retailer.

[7] Claimants, in their present Motion for Summary Judgment, incorrectly frame the issue as whether their "noncompliance with the Tribal tax stamp requirement may have the legal effect of invalidating or causing a withdrawal of Washington State's contractually promised retrocession from its cigarette taxes during the term of the Contract." Motion at 12; Reply at 4–5; see also Motion for Reconsideration at 7. This argument is premised on two erroneous legal conclusions: that Tribal tax stamps, not local tax stamps, were required, and that Washington had contractually promised to retrocede from taxing these cigarettes while the CTC is in effect. As discussed above, the State never retroceded from its tax on Claimants because they do not meet the statutory definition of "Indian retailer" or the contractual definition of "Tribal retailer." Thus, the relevant issue is not whether the failure of Claimants to pay any taxes changed whether the State had agreed not to tax the res, but whether the State ever retroceded from such a tax in the first place. It did not. State tax has always been required on the cigarettes in question.

Because the state taxes were required on the cigarettes, and state law always required stamps indicating the payment of applicable state taxes, the cigarettes are contraband under 18 U.S.C. § 2341(2).[8][9] For this reason, Claimants' Motion is DENIED. The Court orders Claimants to show cause why the Court should not, *sua sponte,* grant summary judgment in favor of the Government. Claimants may file a brief not to exceed 10 pages on or before April 27, 2009. No response shall be filed unless requested by further order of the Court.

IT IS SO ORDERED.

DATED this 20th day of March, 2008.

Thomas S. Zilly
United States District Judge

---

[8] In light of this conclusion, the Court need not engage in the purely academic question of whether the cigarettes could be contraband under federal law for failure to bear applicable Tribal tax stamps that are required under a CTC.

[9] This holding that the cigarettes sold at the Trading Post constituted contraband under Federal law is in accord with a recent order from this District, United States v. Funds From First Regional Bank Account # XXXXX1859, et al., No. C08-0272-JCC (W.D. Wash. March 11, 2009) (docket no. 56).